The following appeal arises from the decision of the Belmont County Common Pleas Court, Juvenile Division, granting permanent custody of a minor child to the Department of Human Services — Children Services Division. For the reasons set forth below, the decision of the Juvenile Court is affirmed.
 I. FACTS
The record reflects that on December 15, 1995, Alicia Cuichta, a minor, was taken to Children's Hospital in Columbus, Ohio by Carla Pavlik ("Pavlik") and Becky Hill ("Hill") due to suspected sexual abuse. At the time of the physical examination, Alicia was six months old. Pavlik and Hill had possession of Alicia at the request of Alicia's mother, Donna White, appellant herein. When Pavlik and Hill observed what they noted to be tears and severe bruising in Alicia's rectal area, they sought medical attention for the child. Upon further investigation, it was discovered that appellant had recently left the six month old child unattended with two male acquaintances. Having confirmed the suspected injuries, Alicia was transferred to Emergency Shelter Care to protect her from further harm.
An Emergency Shelter Care hearing was subsequently held on December 21, 1995. On the same day, the Belmont County Human Services — Children Services Division ("Children Services") filed a complaint alleging sexual abuse and requesting temporary custody. In light of the circumstances, it was determined that Alicia would be placed in temporary emergency custody with Children Services pending a hearing on the complaint. A hearing on Children Services' complaint was held on February 7, 1996. At said hearing it was found that the allegations of the complaint had been proven by clear and convincing evidence. Therefore, Alicia was adjudicated an abused child and was placed in temporary custody with Children Services.
On August 7, 1996, Children Services filed a motion requesting modification of temporary custody to permanent custody. The basis for said motion was the belief that appellant had failed to improve her circumstances to the point where her child could be returned to the home environment. In response to the complaint, the Juvenile Court conducted hearings on October 3 and December 3, 1996. At the initial hearing, Kevin Cuichta, Sr., Alicia's father, voluntarily signed a Permanent Surrender of Child form. During the two days of hearings, numerous witnesses were called by Children Services in an attempt to support its motion. All witnesses were subjected to cross-examination by appellant's appointed counsel. Furthermore, appellant provided testimony on her own behalf and offered testimony from an additional witness. At the conclusion of the presentation of testimony and evidence, the matter was taken under advisement for further review.
On December 30, 1996, the court issued its judgment entry finding that Children Services' motion should be granted and Alicia Cuichta should be placed in the permanent custody of the Belmont County Department of Human Services. The court held that based on the evidence and testimony before it, the best interest of the child demanded that such actions be taken. Appellant filed a timely appeal from the Juvenile Court's decision on January 15, 1997.
In his brief, appellant's appointed counsel raises three potential assignments of error. However, appellant's counsel concludes in his brief that none of the proposed errors have merit and thus moves to be withdrawn as counsel pursuant toState v. Toney (1970), 23 Ohio App.2d 203. This court shall first examine the three proposed assignments of error for merit. We will then conclude with our own review of the record to determine whether any error can be found in the Juvenile Court proceedings.
 II. FIRST PROPOSED ASSIGNMENT OF ERROR
Appellant's first proposed assignment of error can be summed up as follows:
 "THE TRIAL COURT'S OPINION WAS CURSORY, ABRIDGING APPELLANT'S PARENTAL RIGHTS"
Appellant first argues that the Juvenile Court failed to consider and appropriately set out its findings as required by R.C. 2151.414. It is appellant's contention that despite the trial court's ten page judgment entry delineating its reasoning for its ultimate conclusion, the trial court's decision was cursory and failed to meet the statutory requirements.
 A. APPLICABLE LAW
In addressing the permanent termination of parental rights and the grant of permanent custody to a public children service agency, courts are guided by the dictates of R.C. 2151.414. This statute states in relevant part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant a permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
In determining the best interest of the child, the court must examine the factors enumerated in R.C. 2151.414(D) as well as all other factors the court determines to be relevant. Furthermore, permanent custody of a child may not be granted to a human services agency on the grounds that such child cannot be placed with either parent within a reasonable time or should not be so placed, unless the trial court finds by clear and convincing evidence that one or more of the conditions enumerated in R.C. 2151.414(E) exists. Matter of Tirado (Jan. 22, 1998), Mahoning App. No. 97 CA 26, unreported, citing In ReWilliam S. (1996), 75 Ohio St.3d 95, 99.
Clear and convincing evidence has been defined as that measure of proof which is more than a mere preponderance of the evidence but less than the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which would provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122. An appellate court shall not reverse a trial court's determination concerning parental rights unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, 368.
 B. ANALYSIS
Despite appellant's contention that the trial court provided insufficient basis for its decision, a review of the trial court's entry reveals extensive findings of fact detailing the testimony and evidence offered in this case which was relied upon in arriving at the final determination. Said findings comply with the statutory requirements which must be met prior to permanently terminating parental rights.
The trial court cited to testimony elicited from numerous witnesses who testified during the two days of hearings on the matter. Nancy Zinn, an adult therapist, testified during both days of the hearing as to her extensive interactions with appellant. During this testimony Ms. Zinn indicated that while appellant had made some minimal progress, she had failed to make advances in the most concerning areas of her life. For instance, appellant continuously refused to maintain any discussions as related to her past sexual abuse or the sexual abuse of her six month old daughter. Furthermore, appellant insisted that she had no knowledge of what had happened to her daughter or who may have been responsible for her abuse. Although counseling had continued for nearly ten months, no advances were made in these areas. Furthermore, Ms. Zinn opined that appellant continued to suffer from difficulties in controlling her temper. As a result, appellant exhibited aggressive, anti-social traits which had not improved with counseling. Additionally, Ms. Zinn found that appellant failed to take responsibility for her actions. Such a conclusion is supported by appellant's refusal to discuss or take interest in the events which lead to the sexual abuse of her infant daughter. It was Ms. Zinn's observation that appellant's sincerity and motivation were questionable based upon her conduct during counseling over several months.
Further testimony was obtained from William Lawrence, the guardian ad litem appointed to this case. In Mr. Lawrence's opinion, appellant had failed to progress and improve during the six months of supervised visits with Alicia. Mr. Lawrence indicated that appellant continued to be unable to control her emotions during visitation sessions and was subject to numerous outbursts of anger directed towards her daughter. Despite the ongoing threat that appellant may lose her parental rights, she failed to improve her behavior to the point that visitation could be expanded beyond the one hour supervised sessions. As a result of this failure to improve, it was Mr. Lawrence's opinion as guardian ad litem that it would be in the best interest of the child to have appellant's parental rights terminated.
Lisa Davis and Judy Beckett, both of whom observed the supervised visitation as employees of Children Services, provided additional testimony during the hearing. Both individuals witnessed that appellant failed to interact with Alicia during the one hour visits. Moreover, appellant repeatedly lost her temper with Alicia during visitation and argued with the child's father in the child's presence. In Ms. Beckett's opinion, the visitation sessions failed to progress despite the passing of several months and in fact worsened due to appellant's inappropriate interaction. Due to these circumstances, visitation sessions were never able to increase in frequency or duration and were never permitted to be unsupervised in nature.
Finally, Karen Holmes, the caseworker for appellant and Alicia, provided further insight into the best interest of the child. It was Ms. Holmes' opinion that appellant had miserably failed at meeting the goals established in her case plan. During visitation sessions, appellant repeatedly yelled and used profanity despite being reminded of the inappropriateness of such conduct. Although appellant was involved in ongoing counseling, she had failed to progress in establishing control over her anger. Ms. Holmes also substantiated the fact that appellant did not see the importance of discussing the sexual abuse of her daughter. Although it was suggested in the case plan that appellant obtain housing with a family member or another female, she continued to reside with a married man and was pregnant to him at the time of the final hearing. Ms. Holmes concluded her testimony by indicating that Alicia was thriving in her foster home. As such, it was Ms. Holmes' opinion that appellant's parental rights be permanently terminated.
In light of the extensive testimony relied upon by the trial court in reaching its decision, it cannot be determined that the court lacked sufficient evidence to meet its burden of proof. With the exception of appellant's own self-serving testimony which contradicted all other testimony of record, all evidence before the trial court supported its final decision that the best interest of the child required the termination of parental rights. The court clearly considered in its entry the factors enumerated in R.C. 2151.414(D) as to the best interest of the child. For instance, numerous witnesses provided testimony as to the child's interaction with her parent as well as the interaction with the foster parents. Additionally, numerous witnesses testified to the child's need for a secure permanent placement, which appellant was unable to provide. Witness testimony also provided numerous other relevant grounds for finding that the best interest of the child would be served by permanently terminating appellant's parental rights. As such the overwhelming weight of the evidence supported the court's finding as to the best interest of the child.
Similarly, the trial court clearly established in its entry the existence of numerous factors enumerated in R.C.2151.414(E) thereby meeting its burden as related to the inability to place the child in the home of either parent. While the statute only requires the existence of one enumerated factor in order to find that the child cannot or should not be placed with either parent, the trial court has clearly found that multiple factors were proven at trial.
Through witness testimony it was established that although the child had been removed from the home for six months, appellant failed continuously and repeatedly to substantially remedy the conditions which caused the child to be removed from the home. Testimony was provided which indicated that diligent efforts were taken by Children Services in an attempt to assist appellant in remedying her problems. For example, a case plan was created which provided for psychological counseling in an attempt to assist appellant in dealing with her past sexual abuse; her anti-social and violent traits; and the sexual abuse of her daughter. Appellant was also enrolled in parenting classes in order to improve her parenting skills. A visitation schedule was established which permitted supervised visitation with Alicia. During visitation sessions, guidance and advice was provided by Department of Human Services' employees in an attempt to teach appellant how to properly interact with her child. Furthermore, appellant was directed by her case worker to obtain housing in which no males were present in light of the past difficulties with the sexual abuse of her child.
Even though such efforts were taken, it was the opinion of numerous witnesses that appellant failed to ameliorate the conditions which caused the initial removal of the child from the home environment. As previously discussed, appellant's adult therapist, Ms. Zinn, testified that appellant was unwilling to discuss or acknowledge the sexual abuse of her daughter. Furthermore, she was unwilling to discuss her own history of sexual abuse. Ms. Davis and Ms. Beckett, who observed the supervised visitation sessions on behalf of Children Services, found that appellant continued to act inappropriately during visitation in spite of counseling and repeated reminders regarding appropriate and inappropriate behavior. It was Ms. Beckett's opinion that appellant's conduct during visitation had actually deteriorated with the passing of time. Therefore, visitation sessions could not be lengthened in duration and were never able to be unsupervised. Appellant's case worker provided additional testimony that appellant had failed to improve notwithstanding the measures taken by Children Services. Not only had appellant failed to obtain proper housing, she resided with and was pregnant to a married man at the time of the final hearing. Furthermore, appellant had failed to progress in counseling and continued to act out inappropriately during visitation. Interaction and bonding were not occurring between appellant and her child although over six months had passed since the child was removed. As a result, both the case worker and the guardian ad litem felt the child should be permanently removed and appellant should lose all parental rights. This overwhelming evidence is more than sufficient to fulfill the requirements of R.C. 2151.414(E).
Through witness testimony, the trial court also correctly found that pursuant to R. C. 2151.414(E) appellant had demonstrated a lack of commitment toward the child by failing to properly interact when the opportunity arose during visitation. Again, Ms. Davis and Ms. Beckett indicated that appellant would push the child off onto her father during visitation rather than seizing the opportunity to interact with the child. On the occasion any interaction took place, it was largely improper as appellant yelled at the child and persisted in using profanity. No attempt was demonstrated that appellant was willing to provide an adequate home environment for the child.
Lastly, and perhaps most importantly, pursuant to R.C.2151.414(E) appellant had failed in the past to assure that the child was protected from being sexually and physically abused. This act in and of itself is sufficient under statute to support the court's finding that the child should not be returned to the home environment.
Based upon the extensive testimony relied upon by the trial court in reaching its conclusion, sufficient credible evidence was in existence to find by clear and convincing evidence that the minor child could not be placed with appellant within a reasonable time and in fact, should never be so placed. Therefore, it must be held that the trial court's decision in this case properly adhered to the requirements set forth in R.C. 2151.414(D) and (E) and all relevant evidence was considered in reaching said decision.
Appellant's first proposed assignment of error is found to be without merit.
 III. SECOND PROPOSED ASSIGNMENT OF ERROR
In appellant's second proposed assignment of error, it is alleged that Children Services failed to make reasonable efforts to make it possible for the child to return home as is required pursuant to R.C. 2151.419. Appellant bases this proposition on three arguments. First, appellant feels Children Services did not allot sufficient time for appellant to improve home conditions as a motion for permanent custody was filed within seven months of the initial custody order. Second, appellant argues that by not increasing visitation beyond one hour supervised sessions Children Services did not make reasonable efforts to return the child home. Finally, it is asserted that little credit was given to appellant's efforts to establish a home in light of her crushing financial burdens. Based on these factors, appellant contends Children Services did not meet the statutory dictates.
 A. APPLICABLE LAW
As indicated by appellant, R.C. 2151.419 applies to situations in which a child is removed from the home or an agency take steps to extend the time in which a child will be outside of the home. The statute states in pertinent part:
 "(A) At any hearing * * * at which the court removes a child from his home or continues the removal of a child from his home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from his home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from his home, to eliminate the continued removal of the child from his home, or to make it possible for the child to return home. The agency shall have the burden of proving that it has made those reasonable efforts."
In addressing this issue in the past, this court has held that the issue is not whether the Children Services Board could have done more, but whether it did enough to satisfy the reasonableness standard of the statute. Tirado, supra; In theMatter of Deanna Brewer (Feb. 12, 1996), Belmont App. No. 94-B-28, unreported.
 B. ANALYSIS
A review of our analysis under appellant's first proposed assignment of error reveals that Children Services not only met their statutory requirements but in fact went above and beyond the required efforts. Children Services took extreme measures to provide appellant with multiple services in an attempt to return the child to her home. As previously discussed, a case plan was established and was overseen by a case worker in an attempt to remedy the conditions which had caused appellant's daughter to be removed from the home. An adult therapist employed by Children Services was utilized to assist appellant in dealing with her history of sexual abuse, her anti-social traits and the traumatic events which her daughter experienced. Additionally, Children Services established and monitored visitation sessions to improve appellant's relationship with her child in order to facilitate extended, unsupervised visitation. Appellant was also enrolled in two series of parenting classes to improve her parenting techniques and to help cope with the problems she had been experiencing.
Notwithstanding this intensive involvement on behalf of Children Services, witness testimony supported a finding that appellant had failed to improve her conditions and as such should have her parental rights permanently terminated. Appellant continued to refuse to discuss her past sexual abuse or the sexual abuse of her daughter although counseling continued for several months. In that this was the primary catalyst for the removal of the child from the home, the failure to discuss the topic created great concern for the child's safety. Furthermore, appellant had failed to properly interact with her child when given the chance during visitation and in fact continued with inappropriate behavior at these sessions. As previously mentioned, appellant further failed to meet the objectives of her case plan when she did not obtain appropriate housing.
It is clear from appellant's lack of improvement that the grounds cited for this proposition were of her own making. While Children Services did file for permanent custody within seven months of initially obtaining temporary custody, it did make numerous efforts to make it possible for the child to return home. It was appellant's lack of advancement within the objectives created by the case plan which led to the filing for permanent custody. While appellant criticizes Children Services for not expanding visitation beyond the "bare-bones" sessions, it was appellants own conduct which caused Children Services employees to discourage extended, unsupervised visitation. Appellant's continued and repeated outbursts during the sessions as well as her failure to interact with the child when granted the opportunity, did not provide any incentive or justification for an increase in visitation. Moreover, although appellant indicates little credit was given to her efforts to establish a home, a review of the record reveals no evidence that any such effort was taken to establish a home. The only evidence regarding appellant's home life found that appellant was residing with a married man and was pregnant to this individual. Such evidence is hardly indicative of heroic efforts on appellant's behalf to comply with the case plan.
As a result of Children Services' intensive involvement with appellant, it cannot be held that it failed to make reasonable efforts to make it possible for the child to return home. As such, appellant's second proposed assignment of error lacks merit.
 IV. THIRD PROPOSED ASSIGNMENT OF ERROR
In appellant's final assignment of error she alleges that the trial court improperly admitted testimony from an attending psychologist. It is appellant's contention that she had not released the psychologist to testify regarding testing performed and as such said testimony should have been excluded. While appellant raises this as error, she concedes that it is not reversible error as sufficient other evidence was presented to support the contentions of the improperly admitted evidence.
 A. APPLICABLE LAW
An appellate court must affirm the result reached in the trial court when error, if any, is harmless. Civ.R. 61 states:
 "No error in either the admission or the exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."
Additionally, the admission of incompetent physician/counselor testimony, although prejudicial, does not entitle appellant to a reversal if the decision contains sufficient other evidence regarding the same matters. In re Brown (1994), 98 Ohio App.3d 337,345. In such cases, the rejection of the incompetent testimony would not have changed the result as similar evidence existed on record regarding the identical issue. Id. at 346.
 B. ANALYSIS
A review of the record reveals that in fact appellant had not released Cathy Courts, a psychology assistant, to testify. A discussion on the record reveals that counsel for appellant would not waive the release as he was unaware of what Ms. Courts' testimony was going to involve. The trial court nonetheless permitted Ms. Courts to testify.
While the trial court did err in permitting a psychologist to testify without first obtaining proper release, said error is not cause for reversal. The record reflects that sufficient other evidence existed and was properly admitted regarding the identical matters to which Ms. Courts testified. Ms. Courts testimony was derived from a one time evaluation of appellant. Through her testimony, Ms. Courts described to the trial court appellant's low IQ, psychological diagnoses, anger difficulties and history of sexual abuse. These identical issues were testified to in detail by a second psychologist, Nancy Zinn. Ms. Zinn had the opportunity to counsel appellant for several months prior to the final hearing. Furthermore, Ms. Zinn had previously been properly released to testify regarding her counseling of appellant.
In light of this additional testimony on the same issues, appellant's third proposed assignment of error lacks merit.
As previously indicated, appellant's appointed counsel titled his brief as a "no merit" brief pursuant to this court's ruling in State v. Toney (1970), 23 Ohio App.2d 203. While appellate counsel proposed three potential assignments of error, he concluded that none of them had any merit. As such, he moved to be withdrawn as counsel. Subsequently, on November 24, 1998, this court forwarded a letter to appellant directly allowing her thirty days to file a brief alleging any assignments of error pro se. No response or arguments assigning error to the trial court's judgment herein have been forthcoming from appellant.
In State v. Short (Nov. 24, 1997), Columbiana App. No. 96-CO-49, unreported, this court held:
 "It is well settled that an attorney appointed to represent an indigent criminal defendant on his or her first appeal as of right may seek permission to withdraw upon a showing that the appellant's claims have no merit. See, generally, Anders v. California (386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); State v. Toney
(1970), 23 Ohio App.2d 203, 262 N.E.2d 419. To support such a request, appellate counsel must undertake a conscientious examination of the case and accompany his or her request for withdrawal with a brief referring to anything in the record that might arguably support the appeal. Id. The reviewing court must then decide, after a full examination of the proceedings, whether the case is wholly frivolous. Id."
In Toney, supra this court set forth the procedure to be used when counsel of record determines that an indigent's appeal is frivolous:
 "* * * 3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
 4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.
 5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.
 6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.
 7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed."
This court has previously applied the standards set forth inToney to cases in which parental rights are permanently terminated. In the Matter of Mindy Hall (Mar. 30, 1990), Belmont App. No. 89-B-13, unreported.
Based upon a review of appellant's proposed assignments of error as well as the record and transcript of proceedings, this court has found no merit in this case. It cannot be determined that any error was committed on behalf of the trial court which would warrant a reversal of this matter. Based upon the foregoing, court appointed counsel is permitted to withdraw and the judgment of the trial court is hereby affirmed.
Cox, P. J., concurs.
Waite, J., concurs.
APPROVED:
 ------------------------ JOSEPH J. VUKOVICH, JUDGE